UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GWEN G.,

                                                                                         <u>DECISION AND ORDER</u>

                            Plaintiff,

                                                                                         20-CV-6889L

                      v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                            Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the acting Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

On August 8, 2016, plaintiff, then forty-three years old, filed applications for disability insurance benefits under Title II of the Social Security Act, and supplemental security income under Title XVI of the Act, alleging an inability to work as of November 17, 2012 – later amended to August 8, 2016. (Administrative Transcript, Dkt. #13 at 25). Her applications were initially denied. Plaintiff requested a hearing, which was held on September 3, 2019 via videoconference before Administrative Law Judge ("ALJ") Brian Battles. The ALJ issued a partially favorable decision on September 27, 2019, concluding that plaintiff was not disabled under the Social Security Act prior to August 22, 2019, but that plaintiff was disabled on that date and thereafter. (Dkt. #13 at 36). That decision became the final decision of the Commissioner when the Appeals Council denied review on September 11, 2020. (Dkt. #13 at 1-3). Plaintiff now appeals.

The plaintiff has moved for judgment remanding the matter for further proceedings (Dkt. #14), and the Commissioner has cross moved (Dkt. #16) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records, which reflect treatment for fibromyalgia, visual impairment, sleep apnea, carpal tunnel syndrome, obesity, anxiety disorder, major depressive disorder, and post-traumatic stress disorder, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #13 at 28).

Applying the special technique for mental impairments, the ALJ found that plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentration, persistence, and pace; and a moderate limitation in adapting and managing herself. (Dkt. #13 at 29-30).

Upon consideration of the record, the ALJ determined that *prior to August 22, 2019*, plaintiff had the residual functional capacity ("RFC") to perform light work, except that she had to avoid climbing ladders, ropes, and scaffolds, and could no more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She could frequently handle and finger with the

2

bilateral upper extremities. Plaintiff could not work in hazardous environments such as unprotected heights or near moving mechanical parts, and was not able to drive motor vehicles in performing work-related duties. Further, plaintiff was limited to simple, routine, repetitive tasks in a low-stress job, defined as involving only occasional decisions, and tolerating no more than occasional changes in the work setting. (Dkt. #13 at 30).

Given the RFC for a range of light work with additional limitations for the period prior to August 22, 2019, vocational expert Valerie Allen testified that plaintiff could not have returned to her past relevant work as a surgical technician, but could have performed the representative light exertion positions of collator operator, attendant, and mail clerk. (Dkt. #13 at 35-36).

The ALJ further concluded that *beginning August 22, 2019*, plaintiff became disabled because her visual impairments satisfied Listing 2.02 of the Medical-Vocational Guidelines, "Impairment of Visual Acuity." Specifically, objective testing administered on that date demonstrated that plaintiff's vision in her better eye, after maximum correction, had diminished to 20/200 or less. (Dkt. #14 at 24). *See* 20 C.F.R. Part 404, Subpt. P, App. 1, §2.02 ("[Listing] 2.02 Loss of central visual acuity. Remaining vision in the better eye after best correction is 20/200 or less").

I find that the ALJ's determination that plaintiff was disabled as of August 22, 2019 and thereafter was well-supported, and that portion of the decision is affirmed. However, I find that the ALJ's determination that plaintiff's RFC was less limiting from August 8, 2016 through August 21, 2019, and that plaintiff did not become disabled until August 22, 2019, was insufficiently supported, and that additional development of the record is necessary in order to support a determination of plaintiff's RFC during that period.

I.       The "Onset" Date

Plaintiff argues that the ALJ's selection of August 22, 2019 as the date she first became disabled was arbitrary and unsupported. The Court concurs.

"Where, as here, a claimant is found disabled but it is necessary to decide whether the disability arose at an earlier date, the ALJ is required to apply the analytical framework outlined in SSR 83-20, 1983 SSR LEXIS 25 to determine the onset date of disability." *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "Where the ALJ determines that the date of onset is other than what the claimant alleges, the ALJ has an affirmative obligation to 'adduce substantial evidence to support his [finding].'" *Ahisar v. Commissioner*, 2015 U.S. Dist. LEXIS 131674 at *24 (E.D.N.Y. 2015) (quoting *Corbett v. Commissioner*, 2009 U.S. Dist. LEXIS 121261 at *37 (*N.D.N.Y. 2009)). Any onset date inference "must be . . . based on the facts and can never be inconsistent with the medical evidence of record." S.S.R. 83-20, 1983 SSR LEXIS 25 at *6. An arbitrary onset date selection will not be accepted by a reviewing court:

> [C]ourts have held tha[t] an ALJ may not rely on the first date of diagnosis as the onset date simply because an earlier diagnosis date is unavailable. Similar results obtain where an ALJ adopts some other equally arbitrary onset date, such as the date on which the claimant applied for SSI benefits, received a consultative examination, or appeared before an ALJ at an administrative hearing.

*McCall v. Astrue*, 2008 U.S. Dist. LEXIS 104067 at *63 (S.D.N.Y. 2008).

SSR 83-20, 1983 SSR LEXIS 25, acknowledges that, "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling," and, therefore, it may be necessary to "infer" the onset date from the available evidence. *Id*. In such cases, the ALJ's determination as to a particular onset date "must have a legitimate medical basis," and a "[c]onvincing rationale must be given for the date selected." *Id.* "[C]ourts have found it 'essential' for the Commissioner to consult a medical advisor

where . . . a claimant does not have contemporaneous medical evidence from the period around his alleged disability onset date [and] the record is ambiguous with respect to onset date." *Cataneo v. Astrue*, 2013 U.S. Dist. LEXIS 36653 at *48 (E.D.N.Y. 2013) (collecting cases). *See also Monette v. Astrue*, 269 F. App'x 109, 112 (2d Cir. 2008) ("[i]n circumstances where an ALJ has reason to question the onset date of disability, the best practice may be to solicit the views of a medical expert"); *Guzman v. Berryhill*, 2018 U.S. Dist. LEXIS 99464 at *53-*54 (S.D.N.Y. 2018)(same).

The ALJ may also call and rely upon the testimony of lay witnesses, such as a claimant's "family members, friends, and former employers," in determining an onset date. SSR 83-20, 1983 SSR LEXIS 25, *6.

Here, the ALJ explained that the August 22, 2019 onset date was determined with reference to an examination of plaintiff, undertaken that day, by consulting ophthalmologist Dr. Ralph S. Viola. (Dkt. #13 at 826-27). Objective testing of plaintiff's vision by Dr. Viola showed that plaintiff's best-corrected vision was 20/400 in her right eye, and 20/CF (ability limited to "counting fingers" from 6 inches away) in her left eye. Dr. Viola diagnosed refractive amblyopia. *See generally Rocchio v. Astrue*, 2010 U.S. Dist. LEXIS 139682 at *18 n.15 (S.D.N.Y. 2010)("[a]mblyopia, commonly called 'lazy eye,' causes the loss of one's ability to see details"). He opined that plaintiff would have difficulty avoiding workplace hazards, reading ordinary-sized newspaper or book print, reading a computer screen, or discerning differences in shape and color between small objects such as screws or bolts. *Id*.

The ALJ assigned "great weight" to Dr. Viola's opinion, and found based on his objective test results that plaintiff's eyesight met the requirements of Listing 2.02, which requires a best-corrected vision in the better eye of 20/200 or less.

The ALJ's finding that Dr. Viola's August 22, 2019 examination represented the first date that plaintiff's limitations became disabling – based on his conclusion that "treatment notes show no complaints of difficulty seeing" prior to that date – is not sufficiently supported. (Dkt. #13 at 33). To the contrary, plaintiff's self-reported history to Dr. Viola suggested poor vision from an early age. Plaintiff stated that she was first prescribed eyeglasses at age 5. She reported that her visual symptoms were further exacerbated by a 2013 head injury.[1] (Dkt. #13 at 827). A few medical records describing plaintiff's medical history describe her as "legally blind" – suggesting corrected vision below 20/200 – as early as 2015, although it is unclear if, when, or by whom, she was formally diagnosed as such. (Dkt. #13 at 538, 541).

An October 19, 2016 consultative physical examination by Dr. Samuel Balderman (Dkt. #13 at 403-405) supports plaintiff's assertion that her eyesight worsened over time: he assessed plaintiff's uncorrected vision as 20/70 in her right eye and 20/100 in her left, with correction in both eyes (with eyeglasses) to 20/50 – indicating limitations in fine visual acuity, albeit not yet severe enough to satisfy the requirements of Listing 2.02. By the time of Dr. Viola's examination three years later, plaintiff's vision had deteriorated significantly. However, the record contains no evidence of any other eye examinations in the interim.

Amblyopia, if not diagnosed early and treated effectively, can cause irreversible vision loss that worsens over time. *See* Merck Manual Professional Version, https://www.merckmanuals.com/professional/pediatrics/eye-defects-and-conditions-in-children/amblyopia (last visited January 31, 2022). Manifestly, plaintiff was not spontaneously struck blind, as defined

---

[1] Plaintiff's hearing testimony and medical records clarified that the head injury occurred on or about May 5, 2013, when plaintiff was observing the filming of a Spider-Man movie in Rochester, New York, and was struck on the head by a metal sign that fell two stories from a building. (Dkt. #13 at 95-97, 457, 475). *See generally* University of Rochester News (May 2013), https://www.rochester.edu/news/Spidey/ (reporting that scenes from the film, *The Amazing Spider-Man 2* were filmed in Rochester, New York between Tuesday, April 30 and Thursday, May 9, 2013)(last viewed January 31, 2022).

by Listing 2.02, on the morning of August 22, 2019: the ALJ's finding that she did not satisfy the requirements of the Listing prior to that date is not supported by a "convincing rationale." Due to the progressive nature of plaintiff's visual impairments, retrospective testimony by a physician, and/or a qualified medical expert, was necessary in order for the ALJ to make a properly-supported determination of plaintiff's disability onset date.

Because the record does not otherwise contain persuasive proof of disability, remand for further proceedings, rather than for the calculation and payment of benefits, is the appropriate remedy.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision, solely with respect to the period prior to August 22, 2019, was not supported by substantial evidence. The plaintiff's motion for judgment on the pleadings (Dkt. #14) is granted in part, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #16) is denied.

The Commissioner's decision is reversed in part, to the extent that the Commissioner determined that plaintiff was capable of a limited range of light work and was therefore not disabled prior to August 22, 2019, and the matter is remanded for further proceedings. On remand, the ALJ is directed to render a new decision concerning plaintiff's disability claim for the period from the amended alleged onset date of August 8, 2016, through August 21, 2019 (the "relevant period").

Further proceedings in connection with the new decision should include, but are not limited to, developing the record with respect to the date(s) upon which plaintiff's symptoms became disabling, by seeking additional medical records, recontacting treating or examining sources for a

retrospective opinion, consulting a medical advisor, and/or seeking testimony from plaintiff's friends, family, or former employer(s).

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 4, 2022.